IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JAMES L. WEAVER,                            )
                                            )
                    Plaintiff,              )      **CIVIL ACTION**
                                            )
v.                                          )      No.  03-1169-MLB
                                            )
THE PAUL REVERE LIFE INSURANCE              )
COMPANY d/b/a UNUMPROVIDENT                 )
CORPORATION,                                )
                                            )
                    Defendant.              )
_____ )

<u>**MEMORANDUM AND ORDER**</u>

## I.   INTRODUCTION

     This case comes before the court on defendant's motion for
summary judgment.  (Doc. 16.)  The motion has been fully briefed and
is ripe for decision.  (Docs. 17, 18, 19, 20, 24.)  In addition to the
ordinary briefing on this motion, the court conducted two hearings and
allowed the parties to submit additional information by letter.[1]
(Docs. 19, 20, 24.)  Having finally gleaned the necessary information
from the parties, defendant's motion is GRANTED for reasons set forth
herein.

## II.  FACTS

     This case arises under the Employee Retirement Income Security
Act (ERISA), 29 U.S.C. §§ 1001-1461.  Plaintiff worked as an engineer
for Cessna Aircraft Company/Textron, Inc. (Textron).  Over the course
of his life, plaintiff apparently suffered from various mental issues
including depression, along with a history of alcohol abuse.  On

_____

     [1] Although plaintiff was afforded the opportunity to submit two
letter briefs, as defendant did, plaintiff apparently elected to
provide only one such brief.

December 18, 1999, plaintiff ceased working due to interpersonal conflicts with his immediate supervisor. Following some effort to place him elsewhere in the company, Textron terminated plaintiff's employment on February 19, 2000. (Doc. 17 at 3.)

Defendant provides long term disability benefits to Textron's full-time employees under an agreement effective January 1, 1986 (the Plan). Some ten months after plaintiff was terminated, he filed an application for long term disability benefits under the Plan, claiming disability due to a mental impairment. Id. exh. C. Thereafter, defendant requested medical records and information from the health care providers identified in the application for benefits. Having finally received the requested information, on May 4, 2001, defendant referred the claim to its in-house medical personnel for review. Id. at 3.

The record was initially reviewed by Clinical Review Specialist Jane Price. In order to be eligible for long term disability benefits, the Plan required that, inter alia, a claimant be under the regular care of a doctor during the six-month elimination period starting the date of alleged disability onset, which was listed as December 18, 1999.[2] (Docs. 16 exh. C; 25 at PD61000.1.) Price noted

---

[2] This Plan is undoubtedly the most poorly arranged employee benefits plan that the court has ever had the displeasure of reviewing. It is comprised of a patchwork of individual pages cobbled together and deciphered by looking at the top of each page to determine whether it applies to the particular entity with which the claimant is employed. The Plan is arranged in such a non-sensical manner that defense counsel could not even begin to explain it during oral argument. Nonetheless, once one goes through the drudgery of discarding all the pages that do not apply to the present case, there remains the skeleton of an employee benefits plan which seems to satisfy the low bar set by ERISA.

that the medical records received from plaintiff's psychologist, Dr. Buell, showed a gap in treatment between June 29, 1999 and July 26, 2000.  Only two episodes of treatment were documented during the elimination period, both of which were with plaintiff's primary care physicians.  The first encounter occurred on January 20, 2000, in which plaintiff was described as having "social isolation, crying spells, labile mood and dysphoria."  (Doc. 17 at 4.)  The physician prescribed Zoloft, but plaintiff apparently discontinued the medication after two weeks.  Then, on March 23, 2000, another office note from the primary care physicians indicates that plaintiff's condition had improved and no further medication was prescribed.  In addition, Price noted that Dr. Buell's functional capacity evaluation concluded that plaintiff suffered only "mild, moderate, or no impairment" as of January 19, 2001.  Based on the dearth of treatment around the alleged date of disability onset, along with Dr. Buell's findings of little to no impairment, Price concluded that there was insufficient documentation to conclude that plaintiff was disabled from performing his occupation as an engineer.  Id.

Following Price's evaluation, plaintiff's claim was also reviewed by defendant's medical director, Dr. David A. Goldsmith.  Goldsmith concurred with Price's findings and conclusions.  He also emphasized the lack of clinical evidence to show that plaintiff's mental illness caused him to stop working.  Instead, Goldsmith noted plaintiff's own admission that he stopped working on December 18, 1999 due to conflicts with his supervisor.  Id. at 5.

As a result of these evaluations, plaintiff's claim for disability benefits was denied on May 21, 2001.  In the letter

-3-

informing plaintiff of its decision, defendant specifically informed plaintiff that its decision was based on lack of evidence regarding his restrictions and limitations during and after the elimination period.  The letter also quoted Dr. Goldsmith's conclusion that "there is insufficient evidence that you stopped working because of a mental illness, as opposed to non-clinical factors, such as conflict with supervisors."  Finally, the letter made clear to plaintiff that to be considered "Totally Disabled" under the Plan, he would have to provide evidence that

> 1.  Because of injury or sickness, the employee cannot perform, with or without reasonable accommodation, the important duties of his own occupation;
> 2.  The employee is under the regular care of a doctor; and
> 3.  The employee does not work at all.

Id. exh. G at 1-2.  Accordingly, plaintiff was on notice that he needed to provide evidence of treatment, along with accompanying evaluations of his restrictions and limitations sufficient to show that he was totally disabled during and after the elimination period.

By letter dated July 12, 2001, plaintiff formally appealed the initial denial of his claim.  Nonetheless, he failed to provide any additional evidence to show that he was under the treatment of a doctor during the elimination period, or that his impairments were sufficiently severe to preclude his employment as an engineer during that time.  Instead, he provided a two-page letter from Dr. Buell dated July 3, 2001, that described in narrative format his lifelong mental health history.  Unfortunately, whatever value the letter may have had as clinical evidence of impairment, it did nothing to answer the lingering question regarding whether plaintiff was undergoing

-4-

treatment during the elimination period and whether his condition was sufficiently severe at the time he quit working that it could have been the cause of his hiatus. Accordingly, following an independent review of plaintiff's claim, on September 7, 2001, defendant denied benefits on appeal. Id. at 5-6; (Doc. 19 exh. A.)

Although the letter explaining the denial on appeal expressly indicated that defendant's decision was now final, plaintiff continued to contact defendant and offer additional evidence. In particular, plaintiff provided another letter from Dr. Buell, dated October 11, 2001, in which Dr. Buell explained that the apparent gap in plaintiff's treatment from mid-1999 to mid-2000 was due to some computer error. Dr. Buell attempted to reconstruct plaintiff's visits from his office calendar; however, he offered no treatment notes or other objective evidence to document what transpired during those alleged visits. (Doc. 18 exh. 1.)

It appears that plaintiff continued to contact defendant over the next few months until, in March 2002, defendant sent him a letter summarizing their recent communications and reminding plaintiff that its decision on appeal was final as of the date it was rendered, September 7, 2001. Nonetheless, plaintiff persisted by writing another letter to defendant, the contents of which are unclear from the briefs. In its final correspondence with plaintiff, dated July 13, 2002, defendant attempted to explain that the October 11, 2001 letter from Dr. Buell was simply too little, too late. Defendant stood by the finality of its September 7, 2001 decision. This suit followed, in which plaintiff asks the court to overturn the administrator's decision pursuant to authority granted under 29 U.S.C.

-5-

§ 1132(a)(1)(B), (e).   (Doc. 17 at 7, exh. K.)

**III.  STANDARD OF REVIEW**

Ordinarily, the court would expect to see more of the record upon which the administrator based its benefits determination.  However, in the case at bar, plaintiff has conceded all material facts necessary to decide the matter, and this case is so wholly lacking in merit that there is simply no reason to delay a decision.

"[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a _de novo_ standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." _Firestone Tire and Rubber Co. v. Bruch_, 489 U.S. 101, 115 (1989).  If the benefit plan gives the administrator or fiduciary that authority, the court must then judge the denial of benefits according to an arbitrary and capricious standard.  _See Kimber v. Thiokol Corp._, 196 F.3d 1092, 1097 (10th Cir. 1999).  Yet, even under the arbitrary and capricious standard, the administrator's decision is reviewed under a sliding scale of deference, dependent on the existence and seriousness of any conflict of interest under which the administrator labors.  _Fought v. Unum Life Ins. Co. Of Am._, 379 F.3d 997, 1004 (10th Cir. 2004).

Curiously, neither party addressed these matters in the initial round of briefing.  Although defendant cited _Bruch_ in its argument, and subsequently argued that its decision was to be reviewed under an arbitrary and capricious standard, (Doc. 17 at 10-11), defendant failed to include the relevant Plan provisions that conferred upon it the discretion to interpret the Plan and make disability

-6-

determinations. <u>Id.</u> at 2-7, exh. A. Similarly, plaintiff makes no mention of <u>any</u> of these cases; nor does he discuss any conflict of interest that might reduce deference owed defendant's decision.[3] (Docs. 18, 19.) It is clear from <u>Fought</u> that defendant, as both administrator and insurer, operates under an inherent conflict of interest. <u>Fought</u>, 379 F.3d at 1006 (citing Kathryn J. Kennedy, Judicial Standard of Review in ERISA Benefit Claim Cases, 50 Am. U. L. Rev. 1083, 1173 (2001); <u>Pitman v. Blue Cross and Blue Shield of Okla.</u>, 217 F.3d 1291, 1296 (10th Cir. 2000)). The ordinary result of that conflict would shift the burden from plaintiff to defendant to prove the reasonableness of its decision under the arbitrary and capricious standard. <u>Id.</u> Nonetheless, defendant bears the burden of proving in the first instance that the court should review its decision under the arbitrary and capricious standard instead of conducting a <u>de novo</u> review. <u>See</u> <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 249 (2d Cir. 1999).

In light of the foregoing, the court ordered defendant to file a copy of the Plan, and to point out any plan language purporting to convey the requisite discretion. (Doc. 21.) Defendant provided a paper copy of the Plan to the court and opposing counsel, and the court subsequently directed that the Plan be filed electronically with the clerk. (Doc. 25.) However, neither the Plan's language, nor

---

[3] In fact, plaintiff failed to cite a single case in his entire response brief. (Doc. 18.) This omission was noted by the court during a hearing on this motion on November 29, 2004. Despite the court's permitting the parties to submit supplemental letters regarding case law affecting this decision, and in spite of the extraordinary abundance of Tenth Circuit case law on ERISA benefit determinations, plaintiff failed to cite a single Tenth Circuit case in his letter. (Doc. 19.)

defendant's comments at oral argument, reveal the requisite intent to convey discretion upon the administrator to make factual findings or interpret the terms of the Plan.  Specifically, the relevant portions of the Plan discussing the claimant's duty to provide proof of his disability provides as follows:

> <u>Written notice</u> of a claim for disability must be given to us. . . .
>
> After we receive <u>written notice</u> of claim, we provide a proof of loss form. . . . <u>Written proof</u> should establish facts about the claim such as occurrence, nature and extent of the disability, injury or sickness or the loss involved.
>
> The claimant must file <u>written proof</u> of the loss within one year of the start of the period for which we are liable.  <u>We have the right to require additional written proof to verify the continuance of any disability</u>.  We may request this additional proof as often as we feel is necessary, within reason.
>
> If <u>proof of loss</u> is not submitted and received by us within the required time period, the claim may be reduced or invalidated. . . .
>
> . . . .
>
> We have the right to require, at our own expense, a medical exam of any claimant as often as it may reasonably be required.
>
> . . . .
>
> Any accrued benefits are paid as they accrue during the time we are liable.  All accrued benefits payable are subject to receipt of <u>proof of loss</u>.

<u>Id.</u> at PD69501, 551 (emphasis added) (paragraph headings omitted). These provisions speak almost exclusively in terms of "written notice," "written proof," and "proof of loss."  <u>Id.</u>

In evaluating whether the terms of a benefit plan convey

-8-

discretion to make factual determinations, the court often looks to the language used to describe the type of proof to be provided. See Nance v. Sun Life Assur. Co. of Canada, 294 F.3d 1263, 1267 (10th Cir. 2002). In Nance, the Tenth Circuit discussed in some detail the type of language that might convey discretion to make benefit determinations. See generally id. at 1267-68. Nance reviewed plan language that called for "proof," "adequate proof," "satisfactory proof," and "proof satisfactory to [the plan administrator]." Id. After reviewing relevant decisions by other circuits, Nance noted that neither "proof" nor "adequate proof" had been held sufficient to convey discretion upon an administrator, and that it was even questionable whether "satisfactory proof" would convey such discretion. Id. However, Nance held that language stating that proof must be "satisfactory to [the plan administrator]" would convey discretion upon the administrator to make factual determinations. Id. at 1268.

In contrast to the plan language at issue in Nance, this Plan has absolutely no language that would be sufficient to convey discretion to defendant to make factual determinations regarding disability. The Plan speaks in terms of proof and written proof. Nowhere does it speak in terms of adequate proof, satisfactory proof, proof satisfactory to the defendant, or any similar language. Likewise, defendant points to no language that would convey upon it discretion to interpret the terms of the Plan. Accordingly, the court will interpret the plan and review defendant's factual determinations de novo.

**IV. ANALYSIS**

-9-

Plaintiff's only argument for reversing defendant's benefit determination is that defendant was required to accept and consider additional evidence surrounding the disability, even after the administrative appeals process had been completed. (Docs. 18 at 2; 19 at 1.)  He concedes in his letter that defendant "[did] not have an affirmative duty to gather information concerning a claim for benefits." (Doc. 19 at 4.)  The court agrees.  ERISA does not impose on administrators a duty to gather evidence of a claimant's disability, although the benefits plan may impose such a burden.  Gaither v. Aetna Life Ins. Co., 388 F.3d 759, 770-71 (10th Cir. 2004).  Plaintiff makes no such argument.  Similarly, plaintiff fails to challenge the validity of the initial benefits determination.  Accordingly, the only issue before the court is whether defendant had to reconsider its appellate decision based on plaintiff's belated offer of additional evidence.

With respect to plaintiff's assertion that defendant was obligated to continue to receive evidence and repeatedly reconsider its prior decisions, ERISA provides that an administrator must "afford a reasonable opportunity to any participant whose claim for benefits had been denied for a full and fair review" of the claim.  29 U.S.C. § 1133(2).  "[A] full and fair review means knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision."  Sage v. Automation, Inc. Pension Plan and Trust, 845 F.2d 885, 893-94 (10th Cir. 1988) (citation and internal quotation marks omitted).  Ordinarily, the

-10-

court would first look to the terms of the Plan in order to decide whether the appeals procedure satisfies the requirements for a full and fair review.  However, a review of the Plan reveals no written appeals procedures that would shed light on whether defendant was obligated to perform a second review of its decision.  Nonetheless, that deficiency is not necessarily fatal.  As our circuit has noted, 29 U.S.C. § 1133 does not mandate a <u>written</u> claims procedure.  <u>Sage</u>, 845 F.2d at 893; <u>see also</u> <u>Brown v. Ret. Comm. of Briggs & Stratton Ret. Plan</u>, 797 F.2d 521, 533 (7th Cir. 1986).  Rather, it requires the aforementioned full and fair review.[4]  <u>Sage</u>, 845 F.2d at 893.  When a benefits plan fails to provide a written appeals procedure, the court simply reviews the procedure that was used to determine if the claimant was provided the requisite full and fair review.  <u>See id.</u> at 894; <u>Brown</u>, 797 F.2d at 533.  In this case, that simply requires the court to review the communications between defendant and plaintiff to determine whether any indication was given that defendant would accept additional evidence after its review had been completed.

Focusing specifically on defendant's letter (dated September 7, 2001) informing plaintiff that his claim was denied on review, defendant unequivocally stated, "With the completion of this review, our appellate review is concluded and our decision is final.  The administrative remedy provided for by the policy has been exhausted with the conclusion of this appellate review."  (Doc. 17 exh. J.) This language could not be more clear.  It unequivocally informed

_____

[4] Note also that the Secretary of Labor's regulations fail to impose any requirement that the appeals procedures be in writing.  <u>See generally</u> 29 C.F.R. § 2560.503-1 (2000).

-11-

plaintiff that there was no more administrative review available to him.  Despite this conclusion, plaintiff would apparently have the court hold as a matter of law that defendant was required to consider additional evidence after its initial appellate review.

In <u>Sandoval v. Aetna Life and Cas. Ins. Co.</u>, 967 F.2d 377 (10th Cir. 1992), the Tenth Circuit was faced with issues somewhat similar to those presented here.  Claimant had been found disabled due to a physical impairment and awarded benefits by the administrator.  During a subsequent review of his continued disability, as permitted by the benefits plan at issue in that case, an examining physician concluded that he was no longer totally disabled due to this physical impairment.  Accordingly, the administrator terminated his benefits.  The claimant went through the administrative appeals process, but failed to present any additional evidence regarding any <u>other</u> impairments.  After having the termination of benefits upheld on appeal, the claimant filed suit under ERISA.  During the pendency of that case, he obtained evidence from another physician that, at the time his disability benefits were terminated, he suffered from a completely separate <u>psychological</u> impairment that rendered him totally disabled.  <u>Id.</u> at 378-79.

In reviewing the case on appeal, the Tenth Circuit stated that "[i]n determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator <u>at the time it made that decision</u>."  <u>Id.</u> at 380.  In upholding the administrator's decision, the court went on to say "[a]n administrator's decision is not arbitrary or capricious for failing to take into account evidence

-12-

not before it." Id. at 381.  Finally, the court summarized its

conclusions on this matter in the following, oft-quoted statement:

> In effect, a curtain falls when the fiduciary
> completes its review, and for purposes of
> determining if substantial evidence supported the
> decision, the district court must evaluate the
> record as it was at the time of the decision.

Id.  Although Sandoval dealt with a review under the arbitrary and

capricious standard, its reasoning applies with almost equal force in

this circumstance, where plaintiff similarly attempts to introduce new

evidence into the record after defendant completed its review of his

claim.  Here, it is undisputed that as of September 7, 2001, the date

defendant completed its appellate review, plaintiff had provided no

evidence to show that he was under the regular care of a doctor during

the elimination period - an explicit Plan requirement in order to be

eligible for disability benefits.[5]  Thus, even under de novo review,

it is indisputable that plaintiff failed to provide proof of an

essential element for his claim of disability.  Defendant's decision

to deny his claim was therefore appropriate.

    Despite that conclusion, plaintiff argues that defendant granted

---

[5] The Plan states as follows:
> Totally  Disabled  from  the  employee's  own
> occupation  or  total  disability  from  the
> employee's own occupation means that during the
> Elimination Period and the first 18 months after
> benefits begin:
> 1.  Because of injury or sickness, the employee
> cannot  perform,  with  or  without  reasonable
> accommodation,  the  important  duties  of  his  own
> occupation;
> 2.  The employee is under the regular care of a
> doctor; and
> 3.  The employee does not work at all.

(Doc. 25 at PD61000.1)

him an extension of time to provide additional evidence. (Doc. 19 at 5.)   However, plaintiff bases his argument on the fact that defendant's letter of June 13, 2002 made some reference to the additional evidence he provided after defendant denied his appeal on September 7, 2001. The court rejects this argument. As previously stated, the letter of September 7, 2001, unequivocally stated that defendant's decision was final and the administrative review was complete.   Furthermore, although Dr. Buell sent the additional evidence at issue here on October 11, 2001, (Doc. 18 exh. 1), defendant's letter of March 13, 2002, makes <u>no reference</u> to this additional material. (Doc. 17 exh. B.) Instead, the March 13 letter reiterated the lack of evidence of treatment during the elimination period and firmly pointed out that defendant's decision of September 7, 2001, was final at the time it was rendered. The mere fact that defendant later responded to plaintiff's repeated letters and telephone calls is not sufficient to infer that defendant reopened plaintiff's case.   Rather, it indicates that defendant was simply trying to convey to plaintiff that his case was closed and that his continued efforts would not change the outcome.   Moreover, in reviewing plaintiff's argument on this matter, he fails to cite a single case to support his legal conclusion that defendant's actions amounted to a reopening of his claim or an offer for him to supplement the record. <u>See</u> <u>Cuenca v. Univ. of Kan.</u>, 2004 WL 1328676, *1 (10th Cir. June 15, 2004) ("Notwithstanding the limited number of specific, fact-based arguments he presents, Cuenca apparently wishes us either to perform his task of applying the law to the facts, or—worse yet—to comb the entire record and to refine his arguments concerning the

-14-

incidents he described in his voluminous submissions to the district court. <u>This we will not do</u>." (emphasis added)). Accordingly, this argument lacks merit. Defendant's motion for summary judgment is GRANTED.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this  <u>4th</u>   day of March 2005, at Wichita, Kansas.


<u>s/  Monti Belot</u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE


-15-